UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                                              Case No. GL 21-00026-jtg

CRISTOBAL R. SUSTAITA and                                           Chapter 13
JANIE M. SUSTAITA,
                                                                    Hon. John T. Gregg
                    Debtors.
_____/

**OPINION REGARDING OBJECTION TO EXEMPTIONS
CLAIMED UNDER MICH. COMP. LAWS § 600.5451**

APPEARANCES:  Courtney K. Roberts, Esq. for Barbara P. Foley, Chapter 13 Trustee; Michelle Marrs, Esq., Marrs & Terry, PLLC for Cristobal R. Sustaita

Cristobal R. Sustaita, one of the debtors in this jointly-filed chapter 13 case (the "Debtor"), claimed certain exemptions under Mich. Comp. Laws § 600.5451, Michigan's bankruptcy-specific exemption statute.  Barbara P. Foley, the chapter 13 trustee (the "Trustee"), objected to two of those exemptions because she contends that (i) checking and savings accounts, including the funds on deposit therein, do not constitute "[p]rovisions . . . for comfortable subsistence" of a debtor and his or her household for six months under Mich. Comp. Laws § 600.5451(1)(b), and (ii) a debtor's interest in a trust cannot be exempted as a "homestead" under Mich. Comp. Laws § 600.5451(1)(m).

For the following reasons, the court shall sustain the Trustee's objections.[1]

**JURISDICTION**

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

---

[1]    The following constitutes this court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## BACKGROUND

The facts are not complicated.  In 2005, the Debtor and Juana M. Sustaita formed a revocable trust under Michigan law entitled The Cristobal R. Sustaita and Juana M. Sustaita Revocable Living Trust, dated September 10, 2005 (the "Trust").  According to the Abstract of Trust Agreement (the "Trust Agreement"), the Debtor and Ms. Sustaita were the co-grantors/settlors, the trustees, and the beneficiaries of the Trust.

The Trust Agreement was accompanied by a Declaration of Intent (the "Declaration"), which states that as trustees of the Trust, the Debtor and Ms. Sustaita:

> have acquired and will hold in the name of The Cristobal R. Sustaita and Juana M. Sustaita Revocable Living Trust . . . all items listed on Schedule A attached hereto and incorporated herein as amended from time to time and in addition to all household furnishing, automobiles, farming equipment, jewelry, bank accounts, securities, bonds, clothing, and other personal property in our name and henceforth such assets shall and will belong to the said trust and not to us individually or jointly.  We further declare that, except to the extent of the interest provided to us under the terms and provisions of said Trust, that we have no personal interest in any of the above referenced personal properties, it being intended that this declaration constitutes an affirmation of the ownership by The Cristobal R. Sustaita and Juana M. Sustaita Revocable Living Trust. . .

Attached to the Declaration was a schedule designating certain real property in Holt, Michigan (the "Real Property") as part of the Trust *res*.  Around the same time that the Trust was formed, the Debtor and Ms. Sustaita executed and recorded with the register of deeds for Ingham County, Michigan a quit claim deed transferring all right, title and interest in the Real Property to the Trust.

On January 7, 2021, the Debtor and Ms. Sustaita filed a joint petition for relief under chapter 13 of the Bankruptcy Code.[2]  In his Schedule C, the Debtor claimed an exemption in his "checking and savings: MSU FCU" accounts in the amount of $200.00 (the "Accounts") pursuant

---

[2]    The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*.  Specific sections of the Bankruptcy Code are identified herein as "section __."  References to "[Dkt. No. ___]" are to entries on the docket in this case.

to Mich. Comp. Laws § 600.5451(1)(b).  In addition, the Debtor claimed as exempt the "Cristobal and Juana Sustaita Trust – 1654 Grayfairs Ave, Holt, MI 48842" in the amount of $60,725.00 pursuant to Mich. Comp. Laws § 600.5451(1)(m).[3]

The Trustee filed a timely objection [Dkt. No. 26] to the two exemptions, after which the court held a preliminary hearing to determine the issues as required under Fed. R. Bankr. P. 4003(c).  In accordance with the court's scheduling order [Dkt. No. 33], the parties filed briefs [Dkt. Nos. 34, 38], a stipulated list of exhibits [Dkt. No. 40], a stipulated list of facts [Dkt. No. 41], and witness lists [Dkt. Nos. 39, 42].  The parties agreed in the stipulation of facts that the Debtor is claiming "a $60,725.00 exemption in the trust" and "an exemption of $200.00 in credit union accounts."  (Stip. of Facts at ¶¶ 4, 6.)

During the evidentiary hearing, no witnesses were called to testify, nor were any documents introduced into evidence beyond those included in the stipulated list of exhibits.  At the conclusion of the hearing, the court took the matter under advisement.

### ISSUES

The issues before the court are as follows:

(i)     whether checking and savings accounts, including money on deposit therein, constitute "provisions . . . for comfortable subsistence" of a debtor and his or her household for six months under Mich. Comp. Laws § 600.5451(1)(b); and

(ii)    whether an interest in a revocable trust may be exempted as a "homestead" under Mich. Comp. Laws § 600.5451(1)(m).

---

[3]     Ms. Sustaita did not claim exemptions in the Trust or the Accounts on her separately filed Schedule C.

## DISCUSSION

Subject to a state's ability under section 522(b)(2) to "opt-out" of the federal exemption scheme, an individual debtor may claim exemptions under either section 522(d) or applicable non-bankruptcy law. 11 U.S.C. § 522(b)(1); *see Shapiro v. Sassak (In re Sassak)*, 426 B.R. 680, 690-95 (E.D. Mich. 2010). The State of Michigan has not exercised its option under section 522(b)(2), meaning that a debtor may use (i) the federal exemptions set forth in section 522(d), or (ii) the exemptions available under Michigan law. *See* 11 U.S.C. § 522(b)(1), (3).

In this case, the Debtor claimed all of his exemptions under Mich. Comp. Laws § 600.5451, a statutory scheme available only to a Michigan resident who is the subject of an order for relief under the Bankruptcy Code. *See Richardson v. Schafer (In re Schafer)*, 689 F.3d 601, 604 (6th Cir. 2012). This court must therefore apply the statute "in accordance with the controlling decisions of the state supreme court." *Petroleum Enhancer, LLC v. Woodward*, 558 F. App'x 569, 573 (6th Cir. 2014) (internal quotations and citations omitted).

In the event that issues of state law are undecided, the court "must make 'the best prediction . . . of what the [Michigan] Supreme Court would do if it were confronted'" with the same issues. *Kravitz v. Summersett (In re Great Lakes Comnet, Inc.)*, 586 B.R. 718, 724 (Bankr. W.D. Mich. 2018) (quoting *Managed Health Care Assocs. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000) (quotation omitted)). All relevant authority should be taken into account. *Id*. (citing *Mazur v. Young*, 507 F.3d 1013, 1016-17 (6th Cir. 2007) (citation omitted)).

A.      *The Debtor May Not Exempt the Accounts Under Mich. Comp. Laws § 600.5451(1)(b)*

Section 600.5451(1)(b) of the Michigan Compiled Laws provides that a debtor in bankruptcy may exempt "*provisions and fuel for comfortable subsistence* of each householder and his or her family for 6 months." Mich. Comp. Laws § 600.5451(1)(b) (emphasis added). The

Trustee argues that the term "provisions" does not include depository accounts, including money contained therein, as a matter of law. As support, she relies on definitions from dictionaries that were published shortly before and after the enactment of Mich. Comp. Laws § 600.5451 in 2004. The Trustee further contends that this court should decline to consider the meaning of the term "subsistence," as to do so would render the term "provisions" superfluous. Finally, the Trustee suggests that because Michigan law does not provide an express exemption for money, this court should infer that the Michigan legislature intended for all of a debtor's money, including any on deposit in accounts, to be made available to satisfy debts owed to creditors.

Primarily relying on *In re Richardson*, 621 B.R. 413 (Bankr. E.D. Mich. 2020), the Debtor argues that the court should look beyond the term "provisions" by considering all of the terms in the phrase "provisions . . . for comfortable subsistence." Accordingly, the Debtor implicitly directs the court to the meaning of the term "subsistence" as defined by at least one dictionary published around the time that the Michigan legislature first used the phrase "provisions . . . for comfortable subsistence."

1.      *The History of Mich. Comp. Laws § 600.5451(1)(b)*

Although Mich. Comp. Laws § 600.5451(1)(b) was enacted in 2004, the phrase "provisions and fuel for the comfortable subsistence" first appeared in Michigan's exemption scheme in 1842, five years after Michigan attained statehood.[4] Described as "[a]n act to exempt certain property from execution, or sale for any debt, damages, fine or amercement," the Michigan Public Acts of 1842 provided as follows:

> That the household and kitchen furniture of each householder not exceeding in value two hundred and fifty dollars; the wearing apparel of every person and family; the library of every individual and family not exceeding in value one hundred and fifty dollars; the types, presses and other materials of every

---

[4]      As early as 1805, the territory of Michigan adopted a primitive exemption scheme. Thomas R. Morris, *The History and Future of Michigan Debtor Exemptions*, Mich. Bus. L.J. 57 (Summer 2010).

printing office not exceeding one hundred and fifty dollars in value; the tools, implements and stock necessary to enable every mechanic to carry on his business, not exceeding in value one hundred and fifty dollars; all spinning wheels and weaving looms with their apparatus used in families; the pews, slips and seats in every place of public worship, all public cemetaries [sic], all rights of burial, and tombs while in use as repositories of the dead; one fishing skiff or boat, seine, nets or other necessary apparatus to every person whose principal occupation or business is fishing, not exceeding in value sixty dollars; all arms and military equipage for man and horse; two cows, ten sheep, with the wool and cloth manufactured from the same, and five hogs to each householder; to each practical farmer, one yoke of cattle with yoke and chains, or one pair of horses and harness not exceeding in value eighty dollars, one plough, one harrow, one wagon or cart, with all other necessary implements of husbandry, which other implements shall not exceed twenty-five dollars in value, one yoke of cattle with yoke, cart or wagon and chains for every lumberman, one horse and harness and one dray to every drayman; to every practicing physician, one horse, bridle, saddle, surgical instruments and medicines, not exceeding in value one hundred dollars; a sufficient quantity of hay, grain, feed and roots for sustaining and keeping the livestock hereinbefore severally allowed to each class of persons for six months, *and the requisite provisions and fuel for the comfortable subsistence of every family and housekeeper for six months*, shall be and the same are hereby exempted from execution or sale for any debt, damages, fine or amercement whatever:  Provided, that nothing herein contained shall exempt any property from sale on execution obtained on contract for the purchase of the same.

1842 Mich. Pub. Acts 71 (emphasis added).

In 1846, the Michigan legislature revised and reorganized the state's exemption scheme. 1846 Mich. Pub. Acts 477.  The 1846 amendment deleted the term "requisite" but otherwise left intact the exemption for "provisions and fuel for the comfortable subsistence" of a debtor and his household. *Id*. Three years later and again in 1861, the Michigan legislature amended the state's exemption scheme without altering the phrase "provisions and fuel for the comfortable subsistence."  1849 Mich. Pub. Acts 96; 1861 Mich. Pub. Acts 81.

In 1862, the Michigan Supreme Court issued an instructive but not necessarily dispositive decision in which it considered, among other things, whether a judgment debtor's exemption for "provisions . . . for the comfortable subsistence" of a debtor and his household includes barely

visible, recently planted crops.  *King v. Moore*, 10 Mich. 538, 541-44 (1862).[5]  Although the court did not squarely address the issue presently before this court, it did make some relevant observations, if not conclusions.

In a portion of the opinion adopted by only two justices, the *King* court noted that the phrase "'provisions for the comfortable subsistence of the householder and family for six months', does not specify any particular kind of provisions, doubtless anything which is susceptible of use as provisions may be exempt under this designation."  *Id*. at 543 (citation omitted).[6]  Standing alone, such statement would seem to counsel in favor of a broad meaning of the term "provisions."

The court was not through, however, as the two justices countenanced their prior statement by explaining that:

> *corn and potatoes so recently planted as to be but just visible above the ground, are wholly incapable of use as food, and in that state can with no propriety be called "provisions."*  They may or may not, in the ordinary course of vegetation, assume a shape, or produce fruit, fit for food, before the time for sale on the execution (which by the twenty-sixth section is not to be until they are ripe or fit to be harvested), and it seems to have been thought by the court below that for this reason they ought to be exempt while growing, when the owner has not otherwise the requisite amount of provisions.  This would doubtless have been a reasonable provision, had the Legislature seen fit to so provide.  But we are not to decide what we think the Legislature ought to have done, but what they have done.  At common law, all such property was liable to execution, and nothing was exempt as food for the support of a family.  The exemption of provisions, like most other exemptions, rests entirely upon the statutes.  Had the legislature seen fit only to establish certain principles upon which exemptions were to be made, we might exempt anything coming within the principle thus established; *but they have chosen to make their exemptions specific*, to define the classes of property to be exempt, the circumstances under which they are to be allowed, as well as the time when the right of exemption shall attach.  *The statute exempts nothing as growing crops, or by that*

---

[5]  *King* never cites to a particular act or statute.  However, according to the facts in *King*, the judgment creditor executed on the judgment debtor's crops in 1858, which was well after the enactment of 1849 Mich. Pub. Acts 96, yet three years before the next amendment to the Michigan exemption scheme in 1861.  *See King*, 10 Mich. at 538-39.

[6]  As *Richardson* notes, a majority of the justices on the *King* court did not hold that a judgment debtor could not exempt unmatured crops.  *In re Richardson*, 621 B.R. at 420.  Rather, "the four Justices split evenly on [that issue]." *Id*.; *see King*, 10 Mich. at 546 (Martin, C.J. concurring) ("The court being thus divided . . . ").

> *designation; and such crops, to be exempt as provisions, must be capable of being used as such when the exemption takes effect.*

*Id*. at 543-44 (emphasis added).

The court provided further insight when all four justices agreed as follows in connection with a separate exemption for hay, grain, feed and roots necessary to care for animals:

> *If the statute*, in cases where the debtor has not the full amount of the property exempted by this section, *had provided an exemption of money or other property for the purpose of enabling him to purchase enough to made [sic] up the deficiency,* there might be good reason for holding the feed for the animals exempted, though he had not the animals at the time of levy; *but the statute has adopted no such principle.*

*Id*. at 540 (emphasis added).

Notwithstanding their initially broad statement, two of four justices in *King* ultimately applied a narrow meaning of the term "provisions" by requiring them to be in existence at the time a judgment creditor executes on a judgment debtor's property.  To be clear, *King* does not directly consider whether the term "provisions" or the phrase "provisions . . . for the comfortable subsistence" includes money, nor does it even address that particular exemption with any consensus.  It does, however, intimate that the Michigan legislature did not intend for a judgment debtor to be able to exempt money as a substitute for specifically listed items of personal property (*e.g*., hay, grain, feed and roots).

In the years after *King*, the Michigan legislature continued to amend the state's exemption scheme.  Each time it was amended, the phrase "provisions and fuel for the comfortable subsistence" was left undisturbed.  1863 Mich. Pub. Acts 287; 1885 Mich. Pub. Acts 11; 1929

Mich. Pub. Acts 223; 1939 Mich. Pub. Acts 420; 1961 Mich. Pub. Acts 598[7]; 1984 Mich. Pub. Acts 174.[8]

In the early 2000s, "an Advisory Committee to the Civil Law and Judiciary Subcommittee of the House Civil and Judiciary Committee of the Michigan Legislature was formed to . . . provide recommendations to update the property exemption laws." *In re Pontius*, 421 B.R. 814, 816-17 (Bankr. W.D. Mich. 2009) (internal citation and quotation omitted), *abrogated on other grounds by In re Schafer*, 689 F.3d at 605-16. After two years of review and deliberation, the advisory committee recommended that significant changes be made to Mich. Comp. Laws § 600.6023, which already included an exemption for "provisions and fuel for comfortable subsistence" of a debtor and his or her household. *Id.* at 817; *see* Mich. Comp. Laws § 600.6023(1)(a).

In 2004, the Michigan legislature adopted and enacted many of the advisory committee's proposed amendments, but not as part of the state's existing general exemption scheme. *See In re Pontius*, 421 B.R. at 817. Instead, for reasons unknown, the legislature provided that only a debtor in bankruptcy is eligible to claim exemptions under 2004 Mich. Pub. Acts 2265, codified at Mich. Comp. Laws § 600.5451. *Id*. at 817 (citation omitted). This new statute included modern-day exemptions for personal property such as a computer, a motor vehicle, and a Roth IRA. In addition, the Michigan legislature imported from Mich. Comp. Laws § 600.6023 the exemption

---

[7]      The exemption appears to have been first codified in 1961. *See* Mich. Comp. Laws § 600.6023(1)(a).

[8]      Certain enactments contain "the" as an article in the phrase, while others do not. For purposes of this decision, the court finds such variance to be immaterial. In 1885, the temporal limitation was reduced to one month until 1929, when the legislature amended the statute to revert back to a six-month period. 1885 Mich. Pub. Acts 11; 1929 Mich. Pub. Acts 223. In 1893, the Michigan legislature enacted 1893 Mich. Pub. Acts 358, which exempted from taxation, not execution or other court process, "provisions and fuel to the value of five hundred dollars to each household. . ." The court has not identified any decisions interpreting that Act.

for "provisions and fuel for comfortable subsistence" of a debtor and his or her household.[9]  When it did so, the Michigan legislature did not delete or otherwise amend Mich. Comp. Laws § 600.6023(1)(a).   Instead, Mich. Comp. Laws § 600.6023(1)(a) and Mich. Comp. Laws § 600.5451(1)(b) both included, and to date continue to include, identical exemptions for "provisions and fuel for comfortable subsistence" of a debtor and his or her household.

2.        *The Trilogy of Decisions Addressing Mich. Comp. Laws § 600.5451(1)(b)*

For over a decade after its enactment, Mich. Comp. Laws § 600.5451(1)(b) does not appear to have been interpreted by any court.[10]   That changed in 2017 when the Bankruptcy Court for the Eastern District of Michigan issued the first of three decisions considering whether money can be exempted under Mich. Comp. Laws § 600.5451(1)(b) as a substitute for, or even as, "provisions." *See In re Richardson*, 621 B.R. at 413; *In re Thibaudeau*, 2019 WL 6125311 (Bankr. E.D. Mich. Nov. 18, 2019); *In re Barlow*, Case No. 17-48802 (Bankr. E.D. Mich. Aug. 29, 2017).

*Barlow*, the first case in the trilogy and one cited by the Debtor, was issued as a bench opinion.  Although a transcript of *Barlow* was not provided to this court, *Richardson* includes the following quote from it:

> While cash is not, technically, 'provisions and fuel,' this Court finds that money used to purchase provisions and fuel qualifies under this exemption. In 2017, people do not store six months of provisions and fuel; they purchase goods on a weekly or monthly basis.  This court finds that the provisions and fuel exemption applies to a *de minimus* amount contained in a checking account, which is most certainly necessary for debtor to buy groceries and pay her utility bills.

---

[9]        In 2012, the Michigan legislature made technical amendments to the preamble of Mich. Comp. Laws § 600.5451.  2012 Mich. Pub. Acts 319.  The legislature again left unchanged the exemption for "provisions and fuel for comfortable subsistence" of a debtor and his or her household.

[10]        This court is not aware of any decisions interpreting Mich. Comp. Laws § 600.6023(1)(a).

*In re Richardson*, 621 B.R. at 418 (quoting *In re Barlow*, Case No. 17-48802 (Bankr. E.D. Mich. Aug. 29, 2017)).   The *Barlow* court thus concluded that money itself does not constitute "provisions."   Nonetheless, it applied a living, breathing meaning to the term by flexibly holding that a small amount of money can be exempted under Mich. Comp. Laws § 600.5451(1)(b) so long as it is used at a later date to purchase "provisions."

In the second installment of the trilogy, *Thibaudeau*, the court held that money used to later purchase "provisions" cannot be exempted under Mich. Comp. Laws § 600.5451(1)(b).   *In re Thibaudeau*, 2019 WL 6125311 at *3.   Applying the canon of construction *expressio unius est exclusio alterius*, the court observed that the Michigan legislature knew how to include the term "money" in the exemption statute as it did in Mich. Comp. Laws § 600.5451(1)(j), yet it presumably chose not to do so in Mich. Comp. Laws § 600.5451(1)(b).[11]   *Id*. at *2.   Somewhat relatedly, the *Thibaudeau* court highlighted that if a debtor were allowed to claim money as exempt pursuant to Mich. Comp. Laws § 600.5451(1)(b), the debtor "could conceivably exempt cash for all other items set forth in [Mich. Comp. Laws § 600.5451], such as $2,775 for a motor vehicle." *Id*.   Analogizing to *King*, the court next explained that money, much like unmatured crops, cannot be exempted and later used to purchase "provisions." *Id*. at *2-3 (citation omitted).   Finally, the court was mindful of a frequently cited tenet — it is the role of the Michigan legislature, not a court, to make changes to a statute.   *Id*. at *3-4 (citation omitted).

Unlike *Barlow*, the *Thibaudeau* court felt compelled to interpret Mich. Comp. Laws § 600.5451(1)(b) strictly.   It concluded that a debtor can only exempt "provisions" that constitute

---

[11]   Under Mich. Comp. Laws § 600.5451(1)(j), a debtor may exempt "money or other benefits paid, provided, or allowed, by a stock or mutual life, health or casualty insurance company because of the disability due to injury or sickness of an insured person," subject to limited exception.

property of the estate as of the petition date, not "provisions" that can be purchased with money after the petition date.

Less than a year after *Thibaudeau*, *Richardson* completed the trilogy when it considered whether the phrase "provisions for comfortable subsistence" includes money itself. *In re Richardson*, 621 B.R. at 414. The *Richardson* court began by examining the definition of "provisions" in several dictionaries published between 1828 and 1881, the general time period of the exemption's initial enactment. *Id*. at 415-416 (citations omitted). Based on those definitions, the court determined that the "more restrictive view of the word 'provisions' as excluding cash would likely be the more plausible one." *Id*. at 416.

However, the *Richardson* court did not end its inquiry with the meaning of the term "provisions." Applying the canon of construction that words in a statute should not be read in isolation, the court considered the meaning of the terms "comfortable" and "subsistence" in relation to "provisions." *Id*. Relying again on a dictionary definition from the 1800s, the court emphasized that the term "subsistence" contemplates "a modicum of comfort and security and includes 'that which supplies the means of living; *as money, pay or wages*.'" *Id.* at 416-17 (emphasis in original). The court thus reasoned that when the entire phrase "provisions . . . for comfortable subsistence" is considered, it militates in favor of including money itself. *Id*. at 417. Finally, the *Richardson* court explained that its holding is consistent with the policy that exemptions should be construed liberally in favor of a debtor. *Id*.

*Richardson* is a clear departure from *Barlow* and *Thibaudeau*. It considered the meaning of "provisions . . . for comfortable subsistence" by examining the plain, ordinary meaning of each word, as well as the entirety of the phrase, in existence at the time the exemption was first enacted.

Moreover, *Richardson* holistically interpreted the phrase "provisions . . . for comfortable subsistence" to include money.

*Barlow*, *Thibaudeau*, and *Richardson* are all thoughtful decisions by three highly-respected judges that arguably demonstrate plausible, albeit quite different, interpretations of Mich. Comp. Laws § 600.5451(1)(b).  While discrete aspects of those decisions are in alignment, the trilogy is, on the whole, irreconcilable.

       3.        *Principles of Statutory Interpretation*

A judgment debtor or a debtor in bankruptcy has been able to claim an exemption for "provisions and fuel for the comfortable subsistence" for more than 160 years.  However, at no point have the terms "provisions," "comfortable," and "subsistence" been defined by the Michigan legislature.  Nor, for that matter, has the Sixth Circuit Court of Appeals or the Michigan Supreme Court definitively addressed the meaning of those terms in the context of Michigan's exemption scheme.

This court must therefore attempt to "ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute." *People v. Hill*, 486 Mich. 658, 786 N.W.2d 601, 606 (2010) (internal quotations and citations omitted).  Effect must be given "to every word, phrase, and clause in a statute" by considering "both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Shinholster v. Annapolis Hosp.*, 471 Mich. 540, 685 N.W.2d 275, 279-80 (2004) (internal quotation and citations omitted).

"Nontechnical words and phrases," like those in Mich. Comp. Laws § 600.5451(1)(b), "should be construed according to their plain meaning, taking into account the context in which the words are used." *S. Dearborn Envtl. Improvement Ass'n, Inc. v. Dep't of Envtl. Quality,* 502 Mich. 349, 917 N.W.2d 603, 608–09 (2018) (internal quotations and citations omitted).  Dictionary

definitions may be consulted to determine the plain and ordinary meaning of terms and phrases in a statute. *See, e.g.*, *People v. Wood*, 506 Mich. 114, 954 N.W.2d 494, 499 (2020). However, because "[c]ontext is a primary determinant of meaning," the text of a statute must always be interpreted "in view of its structure . . . and logical relation of its many parts," including from a grammatical perspective. *TOMRA of N. Am., Inc. v. Dep't of Treasury*, 505 Mich. 333, 952 N.W.2d 384, 392 (2020) (citations and quotations omitted); *see Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 596 N.W.2d 119, 123 (1999) (citations omitted) (court should examine grammatical context).

        a.        *The Plain Meaning of Mich. Comp. Laws § 600.5451(1)(b)*

To establish the statute's plain meaning, the Trustee relies on dictionary definitions from around the time that Mich. Comp. Laws § 600.5451 was enacted, while the Debtor argues in favor of the meaning as it was commonly understood during the 1800s. The court agrees with the Debtor on this point. Although Mich. Comp. Laws § 600.5451(1)(b) was technically enacted in 2004, the court is required to apply the meaning of the relevant terms and phrases from the era in which the statute was first enacted. *See, e.g.*, *Cain v. Waste Mgmt., Inc.*, 472 Mich. 236, 697 N.W.2d 130, 135 (2005); *see In re Certified Question from the U.S. Ct. of Appeals for the Ninth Cir.*, 499 Mich. 477, 885 N.W.2d 628, 631 (2016) (citation omitted) (if possible, dictionaries from era of enactment should be consulted). For this reason, the court finds the dictionaries cited by the Trustee, as well as the fluid meaning of the term "provisions" applied in *Barlow*, to be unpersuasive.

Moreover, this court must respectfully disagree with *Richardson*, which focused on the term "subsistence" when interpreting the phrase "provisions . . . for the comfortable subsistence." From a grammatical perspective, the term "provisions" is a noun that is modified by the prepositional phrase "for the comfortable subsistence," which is the equivalent of an adjective. *See, e.g.*, Diana Hacker, *The Bedford Handbook for Writers* 450-51 (St. Martin's Press 3d ed.

1991).   Because of its adjectival nature, the object of the prepositional phrase, "subsistence," merely qualifies the term "provisions" by describing how exempted "provisions" must be used (*i.e.*, for the subsistence of a debtor and his or her household).   As such, this court only needs to consider the meaning of the term "subsistence" if it first determines that the term "provisions" includes depository accounts or money.

Dictionaries from the 1800s defined the term "provisions" in a variety of ways.   One dictionary from 1842, the year the Michigan legislature first enacted the exemption, defined the plural term "provisions" as:

> food for man ; victuals.  As good provisions contribute so much to the health and comfort of man, the law requires that they shall be wholesome ; he who sells unwholesome provisions, may therefore be punished for a misdemeanor.  2 East, P.C. 822 ; 6 East, R. 133 to 141 ; 3 M. & S. 10 ; 4 Campb. R. 10 ; 4 M. & S. 214.  And in the sale of provisions, the rule is that the seller impliedly warrants that they are wholesome. 3 Bl. Com. 166.

*A Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union* 385 (1842); *see Dictionary of American and English Law, with Definitions of the Technical Terms of the Canon and Civil Laws* 1032 (1888) (including similar definition).

Another dictionary defined the singular term "provision" as:

1.      The act of providing or making previous preparation.

2.      Things provided ; preparation ; measures taken beforehand, either for security, defense or attack, or for the supply of wants.  We make *provision* to defend ourselves from enemies ; we make *provision* for war ; we make *provision* for a voyage or for erecting a building ; we make *provision* for the support of the poor.  Government makes *provision* for its friends.

3.      Stores provided ; stock ; as *provision* of victuals ; *provision* of materials.                                                                 *Knolles.  South.*

4.      Victuals ; food ; provender ; all manner of eatables for man and beast ; as *provisions* for the table or for the family ; *provisions* for an army.                                                     *Milton. Encyc.*

5.      Previous stipulation ; terms or agreement made, or measurers taken for a future exigency.

*American Dictionary of the English Language: Intended to Exhibit* (1828); *see An Elementary Dictionary of the English Language* 223 (1860) (including similar definition); *A Universal and Critical Dictionary of the English Language* 572 (1846) (same).

And a dictionary published more than twenty years after the enactment of Michigan's exemption scheme provided the following relevant descriptions and uses for the singular term "provision":

> Corn may be deemed embraced by a statute exempting "provisions on hand for family use" from execution.  The provisions furnished a ship, strictly considered, are confined to such articles as enter into the food or subsistence for hands and passengers; while stores is a more general term and may embrace wood and coal.  A bequest of "corn, fodder, meat, and other provisions on hand," includes wine and brandy which the testator had laid in and provided for his own use.

*Dictionary of Terms and Phrases Used American or English Jurisprudence* 344 (1879).

After carefully considering dictionary definitions from the 1800s, including those cited in *Richardson*, two different meanings of the term "provisions" or "provision" initially seem plausible.[12]  The term might be interpreted broadly to mean the act of preparing for something or taking measures beforehand to ensure a supply of wants and needs.  In other words, "provisions" could be interpreted to mean any type of preparation undertaken by a debtor to ensure that his household can comfortably subsist for six months.  Under such interpretation, the Debtor's funds

---

[12]     *Richardson* relies upon dictionaries with similar definitions.  *In re Richardson*, 621 B.R. at 415-16 (citations omitted).

maintained on deposit in the Accounts would seemingly constitute "provisions," as money could serve as a means for the Debtor to comfortably subsist.

Alternatively, the term could be interpreted more narrowly to mean only a stock or supply of food, victuals, and possibly materials. However, the term would not include accounts, money, or funds that could later be used by a debtor to purchase a stock or supply of food, victuals, and materials. Under this restrictive definition, the Debtor would not be able to claim an exemption in the Accounts or the funds on deposit therein. He would instead be limited to food, victuals and materials on hand as of the petition date.

Like *Richardson*, this court views the more expansive meaning of the term "provisions" as somewhat of a stretch, particularly because a debtor exempts property, not acts of preparation or measures taken. Moreover, the more prevalent definition of "provisions" during the 1800s was clearly a supply of food, victuals, and materials. *See, e.g.*, *Koontz v. Ameritech Services, Inc.*, 466 Mich. 304, 645 N.W.2d 34, 42 (2002) (citations omitted) (term not ambiguous solely because different dictionary definitions exist). Finally, and perhaps most importantly, none of the dictionaries cited in *Richardson* or reviewed by this court define "provisions" to expressly include depository accounts or money. *Accord McMahon v. Holland*, 260 Mich. 246, 244 N.W. 462, 463 (1932) (noting that if the Michigan legislature had intended to include bank deposits as property owned jointly by husband and wife, it would have expressly said so). In light of the plain and unambiguous meaning of the term "provisions," the court holds that a debtor cannot exempt depository accounts or money under Mich. Comp. Laws § 600.5451(1)(b).

b.      *Canons of Construction*

Even if this court were to find that the term "provisions" is equally susceptible to more than one meaning, thereby giving rise to statutory ambiguity, the court's holding would not change.

*See, e.g., People v. Hall*, 499 Mich. 446, 884 N.W.2d 561, 565 (2016).   Where a statute is ambiguous, Michigan courts turn to various canons of construction to ascertain legislative intent. *See, e.g., D'Agnostini Land Co. LLC v. Dep't of Treasury*, 322 Mich. App. 545, 912 N.W.2d 593, 598 (2018) (citing *People v. Borchard-Ruhland*, 460 Mich. 278, 597 N.W.2d 1, 6 (1999)).

i.      *The Rule Against Surplusage*

As one of the more frequently applied canons of construction, the rule against surplusage requires the court to "avoid an interpretation that would render any part of the statute surplusage or nugatory."  *State Farm Fire and Cas. Co. v. Old Republic Ins. Co.*, 466 Mich. 142, 644 N.W.2d 715, 717 (2002).   For two reasons, the court finds that the interpretation of Mich. Comp. Laws § 600.5451(1)(b) advanced by the Debtor would trigger the rule against surplusage.

First, the court has up to this point focused on the term "provisions," and to a lesser extent "subsistence."  However, the term "fuel," which the Michigan legislature paired with "provisions" through the use of the conjunction "and," is highly relevant to rule against surplusage.   If the Michigan legislature intended to give the term "provisions" a broad meaning encompassing any type of preparation undertaken by a debtor to ensure that he and the other members of his household can comfortably subsist, it would not have needed to include "fuel."  Rather, "fuel" would, like money, simply fall within the meaning of the term "provisions."  Or to state it another way, the term "fuel" would be completely unnecessary if this court were to adopt a broad meaning of the term "provisions."

Second, and as the court has already discussed, the grammatical structure of the exemption is such that the term "provisions" is modified by the prepositional phrase "for comfortable subsistence."  As the Trustee stresses, if the court were to adopt the Debtor's interpretation by

construing the term "subsistence" to include money, the term "provisions" would be consumed and rendered meaningless.

ii.        *Doctrine of* Noscitur a Sociis

This court's holding is further supported by the doctrine of *noscitur a sociis*, or the "whole-text" canon, which "requires consideration of the relationship of text within a single statutory provision as well as its relationship to the text of other provisions within the same act."  *S. Dearborn Envtl.*, 917 N.W.2d at 612 n.16; *see In re LaFrance Minors*, 306 Mich. App. 713, 858 N.W.2d 143, 150 (2014) ("a word or phrase is given meaning by its context or setting.").

Here, the text of the exemption scheme on the whole supports a narrow interpretation of the term "provisions."  At the time of enactment, a judgment debtor was entitled to specific agrarian exemptions, including for livestock, food for livestock, crops, presses, arms, instruments of death, yokes and other tangible personal property.  None of the property listed in the 1842 exemption scheme consisted of, or even remotely resembled, money, cash equivalents, negotiable instruments, or depository accounts, thereby further casting doubt on an expansive meaning of the term "provisions."   The Michigan Supreme Court made a similar point in *King* when it explained that money could not serve as a substitute for any deficiency of hay, grain, feed and roots necessary to care for animals.  *King*, 10 Mich. at 540.  Accordingly, a narrow meaning of the term "provisions" better comports with the text of the other provisions and the statute on the whole.[13]

---

[13]        In *King*, two of the four justices determined that unmatured crops could not be exempted as "provisions" because the Michigan legislature chose "to make their exemptions specific." *King*, 10 Mich. at 543.  When that aspect of the decision is applied in this case, *King* counsels in favor of a specific, and hence the more restrictive, meaning of the term "provisions."  And while it may be that only two of four justices adopted this aspect of the decision, all relevant authority must be considered.

        c.      *A Word Regarding Policy*

Because exemption statutes are remedial in nature, they should generally be liberally construed "for the purpose of carrying out the wise and humane objections in view." *Stewart v. Welton*, 32 Mich. 56, 60 (1875). Yet no matter how tempting it may be to permit a debtor to exempt depository accounts and the money therein under Mich. Comp. Laws § 600.5451(1)(b), policy cannot serve to override the intent of the legislature. *See In re Wylie*, ___ B.R. ___, 2021 WL 2221633, at *4-5 (Bankr. E.D. Mich. May 28, 2021) (citation omitted); *Michigan Ass'n of Home Builders v. City of Troy*, 504 Mich. 204, 934 N.W.2d 713, 718 (2019) (citation omitted). Instead, as expressed in *Thibaudeau*, it is the role of the Michigan legislature, not the court, to change the statute.

After carefully considering the plain meaning, other principles of statutory interpretation, and all relevant authority, this court concludes that the Debtor cannot exempt the Accounts or the money on deposit therein under Mich. Comp. Laws § 600.5451(1)(b).[14] The Trustee's objection must therefore be sustained.

B.     *The Debtor May Not Exempt the Trust Under Mich. Comp. Laws § 600.5451(1)(m)*

Section 600.5451(1)(m) of the Michigan Compiled Laws provides that a debtor in bankruptcy may exempt certain property of the estate, including:

> *[t]he interest* of the debtor, the codebtor, if any, and the debtor's dependents, not to exceed $30,000.00 in value or, if the debtor or a dependent of the

---

[14] In the event that the court were to apply the meaning of the terms "provisions," "comfortable" and "subsistence" from the era in which Mich. Comp. Laws § 600.5451 was enacted as the Trustee argues, the result would not change. Indeed, none of the more modern-day definitions cited by the Trustee make reference to money or its equivalent. Moreover, if the court were to only consider the 2004 enactment to determine legislative intent, *Thibaudeau's* use of *expressio unius est exclusio alterius* would come into play, leading to the strong inference that "money" is not included in Mich. Comp. Laws § 600.5451(1)(b). Finally, even if some ambiguity in the meaning of Mich. Comp. Laws § 600.5451(1)(b) could somehow be construed, the canons of construction discussed herein would continue to require this court to interpret "provisions" narrowly.

> debtor at the time of the filing of the bankruptcy petition is 65 years of age
> or older or disabled, not to exceed $45,000.00 in value, *in a homestead*.

Mich. Comp. Laws § 600.5451(1)(m) (emphasis added).[15]  For the second time in this case, the court must apply the plain meaning rule to determine the intent of the Michigan legislature when it enacted Mich. Comp. Laws § 600.5451(1)(m).

The court's decision on this issue is not a difficult one, particularly because the Debtor and the Trustee stipulated that the property the Debtor is seeking to exempt is the Trust, not the Real Property.  While the Debtor's interest in the Trust is property of the estate, the language of Mich. Comp. Laws § 600.5451(1)(m) is prohibitive to the Debtor's claimed exemption as a matter of law.  The plain meaning of the statute clearly limits the exemption to a "homestead," the definition of which does not mention a trust of any kind.  Mich. Comp. Laws § 600.5451(1)(m); Mich. Comp. Laws § 600.5451(5) (defining "homestead").

Moreover, this is not a situation where the Trust *res* consists of only the Real Property.  The Declaration clearly states that the Trust holds the Real Property "and . . . all household furnishing, automobiles, farming equipment, jewelry, bank accounts, securities, bonds, clothing, and other personal property" in the name of the Trust.  If this court were to overrule the Trustee's objection, the Debtor would be allowed exempt not only the Real Property, but also personal property that is not referenced anywhere in Mich. Comp. Laws § 600.5451(1)(m).  The plain meaning of Mich. Comp. Laws § 600.5451(1)(m) clearly precludes such an interpretation.

Because a "homestead" under Mich. Comp. Laws § 600.5451(5) includes only certain interests of real property, this court concludes that the Debtor cannot exempt his interest in the

---

[15]     The dollar amounts have since increased due to the adjustments required under Mich. Comp. Laws § 600.5451(4).

Trust under Mich. Comp. Laws § 600.5451(1)(m).[16]  The Trustee's objection must therefore be sustained.

### **CONCLUSION**

The court's decision with respect to Mich. Comp. Laws § 600.5451(1)(b) was not an easy one.  Four different courts have now adopted four different interpretations of the same statutory language.  At some point, whether in this case or another, the issue should be considered on appeal. The court's decision regarding Mich. Comp. Laws § 600.5451(1)(m) was not nearly as difficulty, keeping in mind, however, that the court only determined that a debtor cannot exempt his interest in a trust as a "homestead."  The court did not need to consider whether a debtor can exempt real property held in a revocable trust as a "homestead" under Mich. Comp. Laws § 600.5451(1)(m). That issue is left for another day.

For the foregoing reasons, the Trustee's objections are sustained.  The court shall enter an order consistent with this Opinion.

---

[16]    While the Debtor might arguably have intended to exempt only the Real Property as his "homestead" under Mich. Comp. Laws § 600.5451(1)(m), the stipulation of facts expressly states otherwise. After taking the matter under advisement, the court held a status conference to determine whether the parties intended to use different language in the stipulation of facts.  Because the parties were not in agreement during the status conference, the court feels compelled to strictly apply the facts as set forth in the stipulation executed by both parties.

**Signed: July 23, 2021**





John T. Gregg
United States Bankruptcy Judge